# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 12-cv-4277 (JFB) (GRB)

JASON M. CRUZ,

Plaintiff,

VERSUS

VINCENT F. DEMARCO, ET AL.,

Defendants.

**MEMORANDUM AND ORDER**
September 3, 2013

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Jason M. Cruz ("Cruz" or "plaintiff") brought this action against Sheriff Vincent F. DeMarco, Suffolk County Correctional Facility Medical Staff, Suffolk County Correctional Facility Dental Staff, and the Suffolk County Correctional Facility (collectively, the "County Defendants"), as well as against Peconic Bay Medical Center ("Peconic Bay"), alleging violations of Cruz's constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges that corrections officers placed him in housing with rival gang members and, thus, failed to protect him from violence from other prisoners. Plaintiff also alleges that medical personnel, including those from Peconic Bay, failed to properly treat his injuries resulting from that violence by failing to diagnose him with a broken jaw.

The County Defendants initially moved for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), arguing that plaintiff failed to exhaust his administrative remedies. Peconic Bay filed a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), also arguing that Cruz failed to exhaust his administrative remedies, as well as moving for dismissal on numerous other grounds.[1] The Court subsequently converted the County Defendants' motion for judgment on the pleadings and Peconic Bay's motion to dismiss into motions for summary judgment upon receipt of extrinsic documents relevant to the exhaustion issue, and gave plaintiff an opportunity to submit arguments and

---

[1] Specifically, Peconic Bay argued that plaintiff's complaint should also be dismissed because: (1) plaintiff has failed to allege state action by Peconic Bay; (2) plaintiff has failed to state a cause of action; and (3) Peconic Bay has qualified immunity. However, these issues are moot in light of the Court's ruling that plaintiff has failed to exhaust his administrative remedies and, thus, the Court does not address them.

supporting documentation with respect to his alleged failure to exhaust.

For the reasons set forth below, summary judgment is properly granted in favor of the County Defendants and Peconic Bay because of plaintiff's failure to exhaust his administrative remedies.

I. BACKGROUND

A. Factual Background

1. The Complaint

The following facts are taken from the complaint and are not findings of fact by the Court.

Plaintiff is an inmate at the Suffolk County Correctional Facility ("SCCF"). Plaintiff alleges that, on December 5, 2011, corrections officers transferred him to an unsafe housing unit in retaliation for kicking garbage at a corrections officer. (Compl. at 6-7.) Plaintiff claims that, although he has numerous tattoos demonstrating his affiliation with the Crips gang, he was transferred to a housing unit occupied by members of the Bloods, a rival rang. (*Id.* at 7.) Plaintiff alleges that, shortly after he was transferred, he was attacked by fellow inmates and received numerous injuries, including head trauma and a significant laceration to his ear. (*Id.* at 8.) Plaintiff was taken to Peconic Bay for treatment. (*Id.*) The doctor at the hospital said that the only treatment plaintiff needed was stitches for his ear. (*Id.* at 8-9.) When plaintiff became agitated during the procedure, the doctor used medical glue instead of stitches to repair the laceration. (*Id.* at 9.) Plaintiff claims that, once he returned to SCCF, he was not given the antibiotics the doctor at Peconic Bay prescribed for him. (*Id.*)

Plaintiff made two appointments with the dentist because of sustained pain to his face and an inability to eat. (*Id.* at 10.) Plaintiff received two x-rays that did not reveal any bone damage; however, the dentist informed plaintiff that he needed to have a tooth removed. (*Id.*) When plaintiff went to an oral surgeon outside SCCF, another x-ray was performed and the surgeon told plaintiff that he had a broken jaw. (*Id.*) Plaintiff claims that approximately three weeks elapsed between the original fight and the diagnosis of a broken jaw, and that he was not involved in any other altercations that could have caused this injury. (*Id.* at 10-11.)

Plaintiff also alleges that, approximately two months after these events occurred, he was again transferred back to the housing unit with the Bloods gang members. (*Id.* at 11.) Plaintiff states that he was again immediately assaulted upon his return to this housing unit. (*Id.* at 11-12.)

2. The Grievance Procedure

Inmates at the SCCF have a three-tiered formal grievance procedure available to them. Each inmate receives a copy of the Inmate Handbook upon entering the facility. (*See* Decl. of Nicholas DeSimone, Dec. 3, 2012 ("DeSimone Decl.") ¶ 2.) The Inmate Handbook explains the grievance process available for all inmates to follow.

According to the three-part grievance process, an inmate with a grievance must first complain to the correctional officer located in his cell block. This grievance must be filed within five days of the incident giving rise to the grievance. If dissatisfied with the results of the first step, he may file a grievance form to be reviewed by the Housing Sergeant assigned to an inmate's housing unit; if the issue is not there resolved, the grievance will be forwarded

onto the Grievance Coordinator for further investigation, leading to a subsequent determination. The Grievance Coordinator is required to make a written determination within five business days. If an inmate is dissatisfied with the results of the preceding two steps, the inmate may appeal the grievance board's determination to the Warden. If the appeal results in an unfavorable decision, an inmate may appeal this determination to the State Commission of Correction. (*See* DeSimone Decl. Ex. A, Inmate Handbook, at 15-16.)

In his complaint, plaintiff checked the box indicating that he filed a grievance with SCCF regarding this matter. (Compl. at 2.) However, plaintiff merely states that he filed a grievance by "dropp[ing] numerous slips to get called down to the dentist." (*Id.*) Plaintiff also states that he complained about the pain to a nurse and to a dentist. (*Id.* at 3.) Later in the complaint, plaintiff claims that, although SCCF has a grievance procedure, "they do not work with medical, inmate[s] must file medical requests only when it is a medical issue." (*Id.* at 4.) Plaintiff does not detail any formal grievances he filed regarding these incidents; instead, in response to the Court's order converting the motions to ones for summary judgment, plaintiff asserts for the first time that he "[tried] to place a grievance but they just disappeared." (Letter, Aug. 1, 2013, ECF No. 39, at 2.)

In support of their motion for judgment on the pleadings, the County Defendants submitted a declaration from Nicholas DeSimone, the supervisor of the Inmate Grievance Unit at SCCF. The declaration states that Cruz has submitted four grievances to the Inmate Grievance Program at SCCF, none of which involve the incidents at issue in this case. (DeSimone Decl. ¶ 3.) A review of Cruz's grievance file attached to the declaration confirms this representation. (*See* DeSimone Decl. Ex. C.)

B. Procedural Background

Plaintiff filed a complaint in this action on August 24, 2012. The County Defendants answered the complaint on November 5, 2012. Peconic Bay filed a motion to dismiss on December 4, 2012, and the County Defendants filed a motion for judgment on the pleadings on December 5, 2012. Plaintiff filed an opposition to the motions on January 16, 2013. Peconic Bay filed a reply in support of its motion on January 29, 2013. On July 2, 2013, the Court issued an Order converting the motion to dismiss and the motion for judgment on the pleadings into motions for summary judgment, and directed plaintiff to "provide the Court with arguments and supporting documentation with respect to the issues of his alleged failure to exhaust." (ECF No. 37.) The Court also supplied plaintiff with a copy of Local Civil Rules 56.1 and 56.2. On August 1, 2013, plaintiff submitted a letter in response to the Court's order. The Court has fully considered all of the submissions of the parties.

II. STANDARD OF REVIEW

It is accepted that "[w]hen matters outside the pleadings are presented in response to a [Fed. R. Civ. P.] 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000) (citation and internal quotation marks omitted). Generally, "a district court has discretion to convert a motion to dismiss into a motion for summary judgment." *Garcha v. City of*

3

*Beacon*, 351 F. Supp. 2d 213, 216 (S.D.N.Y. 2005). Exercise of such discretion will turn on "'whether or not the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action.'" *Carione v. United States*, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, Civil § 1366 (3d ed. 2004)).

Here, the Court has concluded, in its discretion, that conversion of the County Defendants' motion for judgment on the pleadings and Peconic Bay's motion to dismiss is proper. Specifically, defendants expressly referenced and submitted materials outside of the pleadings for the Court's consideration. Moreover, plaintiff was given the opportunity to present any material pertinent to a summary judgment motion and was supplied with copies of Local Civil Rule 56.1 and 56.2 so that he understood the consequences of a motion for summary judgment. *See Hernandez v. Coffey*, 582 F.3d 303, 309 (2d Cir. 2009). Thus, the Court will review the converted motions under the governing standards for summary judgment.

The moving party bears the burden of establishing that it is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). This burden requires a movant to establish "that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to do so, a party must support their position "by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court must "'view the evidence in the light most favorable to the party opposing summary judgment,'" and "'draw all reasonable inferences in favor of that party.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)).

However, the Second Circuit has made clear that an inmate is not entitled to a jury trial on factual disputes regarding this failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"). *See Messa v. Goord*, 652 F.3d 305, 308 (2d Cir. 2011) (per curiam) (holding that there is no "right to a jury trial on factual disputes regarding an inmate's failure to exhaust administrative remedies as required by the PLRA"); *Abdur-Rahman v. Terrell*, 10-CV-3092, 2012 WL 4472119, at *5 (E.D.N.Y. Sept. 25, 2012) ("Determining whether an inmate has exhausted his remedies is a threshold matter for the court to decide, even where there is a disputed issue of fact.").

III. DISCUSSION

A. Failure to Exhaust

The County Defendants and Peconic Bay argue that plaintiff is barred from bringing this claim in federal court because plaintiff has not exhausted his administrative remedies. For the reasons set forth below, the Court agrees.

1. Legal Standard

The Prison Litigation Reform Act of 1995 states that "[n]o action shall be brought

4

with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' Prisoners must utilize the state's grievance procedures, regardless of whether the relief sought is offered through those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citations omitted)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings" *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (footnote omitted). Therefore, the exhaustion inquiry requires a court to "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal*, 558 F.3d at 124 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007) and *Woodford*, 548 U.S. at 88-90).

Prior to *Woodford*, the Second Circuit

> recognized some nuances in the exhaustion requirement: (1) administrative remedies that are ostensibly 'available' may be unavailable as a practical matter, for instance, if the inmate has already obtained a favorable result in administrative proceedings but has no means of enforcing that result or if the inmate has been deterred by intimidation; (2) similarly, if prison officials inhibit the inmate's ability to seek administrative review, that behavior may equitably estop them from raising an exhaustion defense; (3) imperfect exhaustion may be justified in special circumstances, for instance if the inmate complied with his reasonable interpretation of unclear administrative regulations, or if the inmate reasonably believed he could raise a grievance in disciplinary proceedings and gave prison officials sufficient information to investigate the grievance.

*Reynoso v. Swezey*, 238 F. App'x 660, 662 (2d Cir. 2007) (internal citations omitted); *see also Davis v. New York*, 311 F. App'x 397, 399 (2d Cir. 2009) (citing *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004)). Initially, it was unclear whether the above-discussed considerations would be impacted by *Woodford*. *See, e.g.*, *Reynoso*, 238 F. App'x at 662 ("Because we agree with the district court that [plaintiff] cannot prevail on any of these grounds, we have no occasion to decide whether *Woodford* has bearing on them."); *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("We need not determine what effect *Woodford* has on our case law in this area, however, because [plaintiff] could not have prevailed even under our pre-*Woodford* case law."). However, the Second Circuit has continued to hold post-*Woodford* that an inmate's failure to comply with the exhaustion requirement may be excused on these grounds. *See Messa*, 652 F.3d at 309 (citing the *Hemphill* factors).

As the Supreme Court has held, exhaustion is an affirmative defense. *See Jones*, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their

complaints."); *see also Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (Report and Recommendation) ("Failure to exhaust administrative remedies under the PLRA is an affirmative defense, and thus the defendants have the burden of proving that [plaintiff's] retaliation claim has not been exhausted." (citations omitted)).

### 2. Application

Plaintiff does not state in his complaint that he filed a formal grievance as required by the PLRA. In fact, in his opposition to defendants' original motions, plaintiff does not offer any explanation regarding his failure to exhaust these claims. However, construing the *pro se* plaintiff's complaint liberally, it appears plaintiff could be making two arguments: (1) that the administrative grievance procedures were not "available" to him because prison officials do not allow grievances regarding medical issues, and (2) that he believed "dropping numerous slips" in order to receive medical attention was sufficient to exhaust his remedies. In plaintiff's August 1, 2013 letter to the Court, plaintiff also asserts that he did attempt to file a grievance but that it disappeared. For the reasons set forth below, all of these arguments are without merit.

The Second Circuit has stated that, if a prisoner has failed to exhaust, the Court must determine "whether administrative remedies were in fact 'available' to the prisoner . . . or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop . . . the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill*, 380 F.3d at 686 (internal citations omitted).[2] Moreover, it is clear that "[a]n administrative remedy is not 'available,' and therefore need not be exhausted, if prison officials erroneously inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it." *Pavey v. Conley*, 663 F.3d 899, 906 (7th Cir. 2011) (citations omitted); *see also Smith v. Woods*, No. 03-CV-480, 2006 WL 1133247, at *15 (N.D.N.Y. Apr. 24, 2006) (Report and Recommendation) ("[C]ase law exists supporting the proposition that, assuming plaintiff was instructed by prison officials, contrary to prison regulations, that he could not file a grievance, and plaintiff indeed did not initiate the grievance process by filing that grievance in reliance on that misrepresentation, the formal grievance proceeding required by the prison grievance system was never 'available' to plaintiff within the meaning of the PLRA." (internal alterations, citations, emphasis, and quotation marks omitted)).

In this case, plaintiff has not adequately alleged that the administrative grievance procedure was not "available" to him due to a misrepresentation by prison officials. *See Hemphill*, 380 F.3d at 686. Plaintiff's statement that the SCCF does not allow grievances relating to medical issues is completely self-serving and is devoid of any specific supporting details. For example, plaintiff fails to provide a rejected grievance form or note any conversations with prison officials in which they erroneously told him that he could not file a grievance regarding this issue. *See Kasiem v. Switz*, 756 F. Supp. 2d 570, 577 (S.D.N.Y. 2010) (stating that an inmate could demonstrate that he reasonably believed pursuing a grievance would be "futile or impossible" through the introduction of evidence regarding "prison officials' threats, beatings, or denials of

---

[2] The Second Circuit has noted that "the case law on the PLRA's exhaustion requirement does not always distinguish clearly between" these exceptions to the exhaustion requirement. *Giano v. Goord*, 380 F.3d 670, 677 n.6 (2d Cir. 2004).

6

grievance forms, or by other misconduct deterring him from fulfilling the requisite procedure"). Moreover, plaintiff's assertion is contradicted by the SCCF grievance procedure, and plaintiff has offered no evidence to the contrary.

This case is entirely distinguishable from the Court's recent decision in *Williams v. Suffolk County*, 11-CV-5198, 2012 WL 6727160 (E.D.N.Y. Dec. 28, 2012). In *Williams*, the County also argued that an inmate's claim should be dismissed for failure to exhaust. However, this Court ruled that, although the plaintiff did not properly exhaust his remedies, the plaintiff adequately alleged for purposes of a motion to dismiss that grievance procedures were not available to him because he was erroneously told by prison officials when he filed a formal grievance that he needed to withdraw the grievance and pursue his claim with the Internal Affairs department. *See id.* at *1-6. Here, plaintiff does not even allege that prison officials made any statement or took any action that caused him to reasonably believe that these claims could not be filed through the normal grievance procedure.

Plaintiff's suggestion that he believed "dropping slips" for medical attention was sufficient is also unpersuasive because the PLRA "requires proper exhaustion." *Woodford*, 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, and thus, "submitting sick call requests [does] not properly exhaust [an agency's] available administrative remedies." *Hargrove v. Riley*, CV-04-4587, 2007 WL 389003, at *7 (E.D.N.Y. Jan. 31, 2007); *see also LaBombard v. Burroughs-Biron*, No. 09-CV-136, 2010 WL 2264973, at *6 (D. Vt. April 30, 2010) (Report and Recommendation) (holding that filing sick call slips did not qualify as exhaustion under the PLRA); *Williams v. Metro. Det. Ctr.*, 418 F. Supp. 2d 96, 101 (E.D.N.Y. 2005) ("While the complaint shows that [plaintiff] did make efforts to gain medical attention through letters and conversations with [the warden] and the medical staff, these efforts do not include the required steps of the PLRA's administrative remedy process."); *Muhammad v. Pico*, 02-CIV-1052, 2003 WL 21792158, at *8 (S.D.N.Y. Aug. 5, 2003) (collecting cases and stating that "[d]istrict court decisions in this circuit have repeatedly held that complaint letters to the DOCS Commissioner or the facility Superintendent do not satisfy the PLRA's exhaustion requirements").[3]

Plaintiff has also made no plausible argument that special circumstances exist that warrant excusal from the requirement of proper exhaustion. "Findings of special circumstances have been primarily established where plaintiffs acted pursuant to reasonable interpretations of the regulations, thus preventing exhaustion." *Winston v. Woodward*, 05 CIV. 3385, 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008). Plaintiff has not even argued, let alone introduced any evidence, that a reasonable interpretation of the SCCF handbook would lead a prisoner to believe that seeking medical attention was sufficient to note a formal grievance regarding this situation. Similarly, plaintiff fails to explain why his grievance regarding corrections officials placing him in housing with rival gang members is a medical issue that could

---

[3] Although not dispositive of the issues presented in this case, the Court notes that plaintiff is familiar with the proper procedure for filing a grievance, as he has submitted four grievances related to other subject matters. (*See* DeSimone Decl. ¶ 3; *id.* Ex. C.)

not be resolved through the established grievance procedure.[4]

Plaintiff's new argument, not asserted in his complaint or in his opposition to the original motion, is that he tried to file a grievance but that it disappeared. Plaintiff does not provide any details regarding this alleged attempt to exhaust, nor does he introduce any evidence to support his claim. Instead, he asserts in two conclusory sentences in his filing, after the defendants' motion was converted to a summary judgment motion, that he tried to file a grievance "but they just disappeared" and that no action was taken on some other unspecified grievances. (Letter, Aug. 1, 2013, ECF No. 39, at 2.) As a threshold matter, it is unclear which grievances plaintiff is referencing. In any event, a conclusory claim that a grievance was lost or ignored is insufficient to overcome the PLRA's exhaustion requirement. Instead, if a plaintiff does not get a response to a grievance in the time designated by the grievance procedure – namely, five days in the instant case – he should appeal the decision or take some action to determine what happened with respect to the grievance. Here, plaintiff does not assert, or even attempt to demonstrate, that he followed up with prison officials or took any action once he did not receive a written response from the Grievance Coordinator within five days as described in the Inmate Handbook. (*See* DeSimone Decl. Ex. A.) Therefore, that conclusory assertion cannot be a basis for exhaustion, and is even insufficient to warrant an evidentiary hearing on this issue.[5]

Numerous other courts have reached the same conclusion under analogous circumstances. *See, e.g.*, *Harris v. Loverde*, 08-CV-6069, 2011 WL 5080089, at *3-4 (W.D.N.Y. Oct. 26, 2011) (granting defendants' motion for summary judgment when plaintiff stated that his grievance was "misplaced" but provided insufficient evidence to support his assertion); *LaBombard*, 2010 WL 2264973, at *6 ("[T]he lack of a response did not excuse him from moving to the next step in the process, and eventually appealing to the Commissioner, if necessary, prior to filing suit"); *George v. Morrison*, No. 06 Civ. 3188, 2007 WL 1686321, at *3 (S.D.N.Y. June 11, 2007) ("It is well-settled [] that even when an inmate files a grievance and receives no response, he must nevertheless properly exhaust all appeals before his grievance is considered exhausted." (citation and internal quotation marks omitted)); *Veloz v. New York*, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) ("[P]laintiff's allegation that these particular grievances were misplaced or destroyed by correctional officers ultimately does not relieve him of the requirement to appeal these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming."); *accord Martinez v. Williams*, 186 F. Supp. 2d 353, 357 (S.D.N.Y. 2002); *Waters v. Schneider*, No.

---

[4] If plaintiff had properly exhausted his claim regarding his misdiagnosed medical condition (or if plaintiff was excused from doing so), plaintiff's failure to exhaust his claim regarding his housing placement would not require dismissal of the entire action. *See Jones*, 549 U.S. at 219-224. However, because plaintiff failed to properly exhaust both of his claims, the entire complaint must be dismissed.

[5] If there were disputed issues of material fact regarding plaintiff's failure to exhaust, the Court would hold a hearing before determining whether plaintiff did exhaust or whether he is excused from the PLRA's exhaustion requirements. However, because plaintiff has only made conclusory and vague excuses, and he failed to appeal or follow up with respect to any grievance that purportedly "disappeared," the Court concludes that there are no disputed issues of material fact regarding plaintiff's failure to exhaust, and no hearing on this issue is warranted.

01 CIV. 5217, 2002 WL 727025, at *2 (S.D.N.Y. Apr. 23, 2002).

Accordingly, because a liberal reading of plaintiff's complaint and other submissions demonstrates that he did not exhaust his administrative remedies as required by the PLRA and that no reasonable explanation exists for his failure to do so, defendants have met their burden in proving that this action should be dismissed. However, plaintiff's complaint will be dismissed without prejudice. Plaintiff may re-file his pleadings after attempting to comply with the applicable exhaustion requirements, if that is still possible. *See Neal v. Goord*, 267 F.3d 116, 123 (2d Cir. 2001) ("We have recognized that failure to exhaust administrative remedies is usually a curable, procedural flaw that can be fixed by exhausting those remedies and then reinstituting the suit." (citation and internal quotation marks omitted)), *overruled in part on other grounds by Porter v. Nussle*, 534 U.S. at 516; *Bennett v. Wesley*, 11 CIV. 8715, 2013 WL 1798001, at *7 (S.D.N.Y. Apr. 29, 2013) ("Where, as here, a prisoner has failed to exhaust his available administrative remedies, the law is clear that the appropriate disposition of the unexhausted claims is dismissal without prejudice." (alteration, citation, and internal quotation marks omitted)).

### IV. CONCLUSION

For the foregoing reasons, the Court grants the County Defendants' motion for summary judgment and grants Peconic Bay's motion for summary judgment on the ground that plaintiff has failed to exhaust his administrative remedies. Accordingly, the complaint is dismissed without prejudice. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 3, 2013
    Central Islip, NY

\* \* \*

Plaintiff is proceeding *pro se*. The attorney for the County Defendants is Dennis M. Cohen, Suffolk County Attorney, by Arlene S. Zwilling, H. Lee Dennison Building, P.O. Box 6100, Hauppauge, New York 11788-0099. The attorney for the Peconic Bay Medical Center is Andrew Leslie Zwerling, Garfunkel Wild P.C., 111 Great Neck Road, Suite 503, Great Neck, New York 11021.